## Hudson, et al. v. Nolen.

(Decided March 18, 1911.)

### Appeal from Scott Circuit Court.

1.  Accusing one of Crime—Affidavit Charging—Issual of Warrant—Discharge of Accused From Custody—Action for Malicious Prosecution—When one Should be Excused for Instituting Prosecution.—

Where one had probable cause to and did believe from all the facts within his knowledge that, one had committed a public offense and such knowledge was based upon sufficient evidence to lead a person of ordinary judgment and reasonable discretion to believe the one charged had committed the crime, then he should be excused from making the affidavit and causing the warrant of arrest to be issued, and it was not necessary that the guilt of the person should be established to enable the one procuring the arrest to succeed in an action against him for malicious prosecution.

2. County Attorney Dead at Time of Trial.—While a defendant in an action for malicious prosecution could not testify as to being advised by the county attorney before procuring the warrant of arrest because that officer was dead at the time of the trial, it appeared that the warrant was in the handwriting of the county attorney, and the jury had the right to infer from this fact that the county attorney was advised of the facts before he wrote the affidavit.

JAS. B. FINNELL and L. F. SINCLAIR for appellants.

ROBT. B. FRANKLIN, ROBT. C. TALBOTT and B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The Adams and Southern Express Companies maintain a joint office in the city of Georgetown, Kentucky, which is in the charge of W. P. Nolen, their agent. On December 18, 1909, Saturday, this office was broken into and about $100.00 in money and a check were stolen therefrom. On December 20th, W. P. Nolen made an affidavit upon which a warrant was issued for the arrest of Claude B. Hudson, a boy about nineteen years of age, charging him with the offense. Hudson was arrested that day and detained about one hour, until he gave bond. In a few days thereafter his examining trial was had before the judge of the county court, who, after hearing the evidence, discharged him from custody.

This action was brought in the name of C. B. Hudson by his next friend, against the two express companies and W. P. Nolen for maliciously and without probable cause instituting proceedings and having him placed under arrest upon that charge. All the defendants answered, but soon after the action was instituted, the court, on motion of the plaintiff, dismissed the action against the express companies. W. P. Nolen's answer placed the allegations of the petition in issue and alleged that he had probable cause for the issual of the warrant. This answer was filed at the September term, and at the

May term, 1909, an amended answer was filed in which it was stated that before the warrant was caused to issue for appellant's arrest, appellee advised with R. E. Robertson and stated all the facts to him and asked him whether or not any proceedings should be instituted, and the attorney advised him that such facts constituted probable cause and authorized the making of an affidavit upon which to issue a warrant of arrest and advised him that it was his duty to swear to and sign the affidavit for procuring the warrant. He alleged that he did not know at the time he filed his original answer that it was material to advise his present attorney of these facts and did not until the day of the filing of the amendment. The issues were completed and a trial had which resulted in a verdict and judgment for appellee.

Appellant asks a reversal for several alleged errors. One is that the verdict is flagrantly against the evidence. Appellant's testimony shows pretty conclusively that he did not break into this office or steal anything therefrom. Appellee's testimony was, in substance, that he left the office promptly at six o'clock p. m.; that he locked the door when he left; that he went to his supper, stopped several minutes at a barbershop on his return; that he returned to his office at seven o'clock p. m.; that he found the drivers of the express companies there when he arrived; that they had just reached the place and found the door open, a few coppers on the floor and a sack of pepper which had been scattered over the floor. Appellee stated that as soon as he entered the office he went to the safe, found the door closed but not locked, and discovered that the money and check were missing. One of the drivers stated to him that a few hours before he had heard appellant say that he was broke; that he had no money, but that he was going to have $40.00 to buy a suit of clothes with and $50.00 to spend Christmas. Appellee was informed that one Gains, an editor of a newspaper in Georgetown, was seated near a window of his office in the Wellington hotel; that shortly after six that evening he saw a man dressed in a long dark coat and a slouch hat walking very fast or running from the express office; that the man was about five feet and seven or eight inches high. Appellee further testified that on Sunday morning after the office was broken into he received information from one or two persons that appellant displayed a roll of bills and a check in the lobby of

the Wellington hotel that morning. Appellant went to Lexington that Sunday about noon and it appears that appellee got Stockdell, a constable, to shadow him while there. Stockdell reported to appellee that appellant visited some saloons, crap games and houses of ill repute while there and displayed a roll of bills and a check.

It seems that Stockdell visited the county attorney's office on the following Monday for the purpose of obtaining a warrant of arrest for appellant, and the attorney advised him that it was necessary for Nolen to make the affidavit and sent Stockdell after him and Nolen went to county attorney's office and made the affidavit which was prepared by the attorney, swore to it before the county judge, and the warrant was issued. Appellee testified that he had no enmity towards or ill feelings against appellant, but that he then believed from the facts within his knowledge that appellant had committed the offense.

It was not necessary for appellee to establish the guilt of appellant to succeed in his defense to the action. If he had probable cause to and did believe from all the facts within his knowledge, that appellant committed the crime and such knowledge was based upon sufficient evidence to lead a person of ordinary judgment and reasonable discretion to believe that appellant committed the crime, then he should be excused for making the affidavit and causing the warrant of arrest to be issued. This question was submitted to the jury in apt language.

Appellant admitted that he had no money on Saturday evening, but it was shown without contradiction that he was engaged in a crap game in a certain room in the hotel from nine o'clock that night until four o'clock the next morning; that he won about $30.00 in the game; that about nine o'clock that night a certain person gave him a check for $10.00 which he held until after the examining trial. It also appears that he gave a check that night for $2.00 with which to enter the crap game. While this was an illegal method of obtaining money, it is shown by the testimony that he obtained it in that manner, and this was the roll of money exhibited in the presence of the two persons on Sunday morning in the lobby of the hotel and also in Lexington. There is not the slightest testimony, however, showing that appellee had an intimation of the manner in which appellant obtained the money before the warrant was issued, nor was there anything shown to cause an ordinarily prudent person to

investigate whether he won the money in the manner stated. Appellant did not have a reputation as a gambler, and, according to his own evidence, he seldom entered such games.

The court also told the jury that if the evidence did not show that appellee had probable cause, at the time the warrant was issued, for believing that appellant had committed the offense, that fact was evidence of malice; but if appellee had knowledge of such facts as would have led an ordinarily prudent person to believe that appellant was guilty, then they should find for appellee, regardless of what his feelings towards appellant were. It takes both malice and the want of probable cause to maintain an action like this. Malice may be inferred from a want of probable cause, but a want of probable cause cannot be inferred from malice. If this principle of law did not exist, there would be a laxity in the enforcement of the criminal law, as persons would not institute such proceedings for fear of rendering themselves liable in damages in case they failed to convict.

Appellant objected to instruction number four given by the court, because it authorized the jury to find for appellee if he, before making the affidavit, stated all the facts to R. E. Robertson, the county attorney, and asked his advise as to whether or not a warrant should be procured, and Robertson advised the making of the affidavit and the issual of the warrant. Appellant did not object to this instruction because it did not state the law correctly, but for the reason there was no proof on this point. Robertson, the county attorney, was dead at the time of the trial; consequently, appellee was not permitted to testify to anything that passed between them and there was no positive evidence that he related to the county attorney the facts or that the attorney advised him to make the affidavit and procure the warrant. This is a somewhat doubtful proposition, but the rule of this court is that every question of fact supported by a scintilla of testimony should be submitted to the jury. There was evidence to the effect that Stockdell went to the county attorney to secure the warrant and was advised that it was necessary for Nolen to make the affidavit; that Stockdell went after Nolen who went to the office of the county attorney and made the affidavit; and there was also evidence that the affidavit was in the handwriting of the county attorney. The jury had a

right to infer from these facts, especially when it was the duty of the county attorney to prosecute such cases, that the county attorney was fully advised of all the facts before he wrote the affidavit.

Appellant's counsel objected to the competency of the testimony showing the conduct of appellant while in the city of Lexington, contending that it had a tendency to impeach the character of appellant which could not be done by proof of any particular acts. This is true, but as we understand it that testimony was not introduced for that purpose, but only to show probable cause for the belief that appellant was the person who broke into the office and stole the money and check.

After a careful consideration of the record, we are of the opinion that the jury determined the case upon the theory that appellee had knowledge of sufficient facts to lead an ordinarily prudent person to believe that appellant was guilty, and that appellant acted on that belief and without malice; therefore, the judgment is affirmed.