# J. B. Colt Company v. W. B. Grubbs and M. D. Grubbs.

(Decided July 1, 1924.

## Appeal from Lyon Circuit Court.

1. Master and Servant—Contract Obtained by One Impersonating Another Invalid.—If contract of employment was obtained by one impersonating another, it is invalid.

2.  Contracts—If Contract Invalid, Suit upon it Cannot be Main-
    tained.—If contract is invalid, suit upon it cannot be maintained.

3.  Master and Servant—Sales Agent May Not Delegate Authority.—
    One employed as sales agent, a position of personal trust and con-
    fidence, in view of money and property handled, and bond re-
    quired, cannot without employer's consent delegate his authority
    to his brother and have latter do what contract required him to
    do.

4.  Master and Servant—Sales Agent Held Not Entitled to Commis-
    sion until Money Actually Paid.—Under sales agency contract
    providing commissions on sales should be due only when · sales
    were fully consummated and full settlement received in cash,
    sales agent was not entitled to commission or bonus as to sales
    in process of litigation, or on which payment had not been made.

5.  Master and Servant—Shortage Slips Sent Sales Agent Monthly
    without Complaint should be Allowed as Credit on Trial.—In
    action by sales agent for compensation, court should have credited
    employer with amount indicated by shortage slips mailed to sales
    agent monthly and not objected to until the trial, in absence of
    clear and explicit proof that they were incorrect.

6.  Master and Servant—One Obtaining Employment by Impersonat-
    ing Another Not Entitled to Recover on a Quantum Meruit.—
    Where one obtained employment as sales agent by impersonating
    his brother, employer is not liable for compensation on a quantum
    meruit, in absence of knowledge of and waiver of impersonation.

JOHN C. GATES, BRUCE, BULLITT & GORDON and GROVER
G. SALES for appellant.

N. W. UTLEY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The appellant J. B. Colt Company is a corporation
which manufactures and sells carbide lighting and cook-
ing plants. Sales are made to patrons through sales-
men employed by appellant by written contracts. The
compensation of salesmen is regulated by the terms of
the contract and by bonuses offered by appellant from
time to time, based on the number of sales made.

In February, 1921, W. A. Thompson was a direct
salesman of appellant at Hopkinsville. W. B. Grubbs
was the manager of the postal telegraph company at
Hopkinsville; his health was bad and his physician ad-
vised him to get into open air work; he knew Mr. Thomp-
son and for a week or two went around with Mr. Thomp-
son to learn something about the business of the Colt

Company. On February 10th Thompson gave him a letter of introduction to H. L. Hartsock, the managing salesman of appellant in Kentucky, having an office in Louisville, with a view to his securing employment as a direct salesman. On the same day Grubbs sent to Hartsock this telegram: "I have a letter from W. A. Thompson; can I see you in Louisville tomorrow?" Hartsock replied in the affirmative; as to what followed the evidence is conflicting. The evidence for the appellees is to the effect that M. D. Grubbs had recently returned from the west. He was a younger brother of W. B. Grubbs and had been a telegraph operator in the west, but was then out of a job. They say that W. B. Grubbs gave M. D. Grubbs a letter of introduction to Hartsock and that he went to Louisville and presented his letter of introduction and was known as M. D. Grubbs by Hartsock. The evidence for the appellant is that M. D. Grubbs presented himself to Hartsock at Louisville and delivered the letter from Thompson introducing him as W. B. Grubbs and represented himself to Hartsock as W. B. Grubbs.

He made the application for employment as W. B. Grubbs and so signed the contract. He made a written application to the Royal Indemnity Company for an employe's indemnity bond and signed this as W. B. Grubbs, describing himself in respect to his age, weight and physical appearance, but described his brother W. B. Grubbs in respect to his estate and the value thereof. The indemnity company issued a bond to W. B. Grubbs. The contract of employment was subject to the approval of one of appellant's vice-presidents at its New York office. The contract was sent to New York and it was accepted there as the contract of W. B. Grubbs without any idea that the company was taking into its service M. D. Grubbs. The testimony of the agent at Louisville and the officer at New York is both to the effect that the company would not have taken or approved the contract if it had known that it was taking into its service M. D. Grubbs.

The contract was for a sales agency at Princeton. M. D. Grubbs went to Princeton; he was known there as W. B. Grubbs; every sales contract he made with a purchaser was made in the name of W. B. Grubbs; every communication he made to appellant was signed W. B. Grubbs; he opened accounts with banks and merchants

at Princeton, where he resided, as W. B. Grubbs; he was sued in Princeton police court as W. B. Grubbs and judgment was recovered against him in that name. Thus things ran along until about the first of September, when he claimed certain bonuses and commissions which the company was unwilling to allow, and he then filed this suit in the Caldwell circuit court. He brought the suit in the name of W. B. Grubbs; signed the petition as W. B. Grubbs and as such swore to it without disclosing to the clerk that he was not W. B. Grubbs.

In the third amended petition it was alleged that W. B. Grubbs made the contract with the defendant with the understanding that he was only to render such services as he could, being himself engaged actively in another occupation and that the services sued for were rendered for the defendant by him through his brother M. D. Grubbs and M. D. Grubbs was joined as a party plaintiff. The defendant answered, pleading the facts above stated and charging that it had made no contract with M. D. Grubbs and that W. B. Grubbs had rendered no services; that if it had known the facts the contract would not have been made and M. D. Grubbs would not have been allowed to act. It insists that he obtained the contract by impersonating his brother and that it at all times supposed he was the man who had been the manager of the postal telegraph company and who had the property qualifications named in the application for the bond, and that in fact M. D. Grubbs had acted as its agent without any bond and without its knowledge or consent.

The plaintiffs both testified in substance that W. B. Grubbs could not go to Princeton in February and that it was arranged between him and his brother that his brother should start the business and he would come over and go into it when he had finished up his work at Hopkinsville. They in substance say that this was known to Mr. Hartsock and also to his successor, Mr. T. A. Frazier, who succeeded Hartsock about April 1st; but the latter both positively swear to the contrary and their testimony is strongly confirmed by the fact that W. B. Grubbs himself wrote the company a letter in July asking his appointment as sales agent in Todd county and saying that his brother was the agent at Princeton. He did not sign this letter W. B. Grubbs, but he signed it Bruce Grubbs, and it certainly conveyed no information

J. B. Colt Company v. W. B. and M. D. Grubbs. 193

that he was the man who was carrying on the business at Princeton or in any way interested in that business.

The case was submitted to the circuit judge on the law and the facts without a jury. His special finding of facts are:

"1. That plaintiffs, W. B. Grubbs and M. D. Grubbs, performed services for the defendant under contract, and that M. D. Grubbs was authorized to act for the said W. B. Grubbs, and did so act, and carried out said contract, and worked under same from the 23rd of February, 1921, until about the first of September, 1921."

"2. That he made certain sales entitling him to recover over and above what had been paid him, $707.95."

His conclusions of law are in these words:

"I conclude as a matter of law that although the contract involved in this case was made in the name of W. B. Grubbs, by agreement between W. B. Grubbs and M. D. Grubbs, it was carried out and performed in the name of M. D. Grubbs, and who acted in good faith and rendered most efficient service for which the defendant received the benefit; and I further find as a matter of law that W. B. Grubbs, in his own name, had the right to prosecute this case for the use and benefit of M. D. Grubbs, he being made a party to said suit.

"I find as a matter of law that the defendant is in no wise prejudiced by the suit being prosecuted in the way that it is, and that having received the benefit of the services of M. D. Grubbs it is in no position to complain that the services were performed by M. D. Grubbs, or that the case is prosecuted as it is."

It will be observed that the court does not find that M. D. Grubbs acted in the place of W. B. Grubbs with the knowledge and consent of the defendant. His conclusion of law is that the defendant having received the benefit of the services of M. D. Grubbs must pay for them under the contract, although it made no contract with M. D. Grubbs and intended to make none.

This is a suit upon a written contract; if the contract is invalid the suit upon it cannot be maintained.

If the contract was obtained by M. D. Grubbs impersonating W. B. Grubbs the contract is invalid.

> "There is no agreement where one party enters into the contract under a mistake as to the identity of the other party, as where the party contracted with has falsely represented himself to be another, or has accepted an offer meant for another." 13 C. J. 378.

There are many cases sustaining the text. Arkansas Smelting Co. v. Belding Mining Co., 127 U. S. 387, 32 L. Ed. 248; Bagby & Rivers Co. v. Rivers (Maryland), 40 L. R. A. 632; Birmingham Matinee Club v. McCarty, L. R. A., New Series, vol. 13, p. 156; School Sisters v. Kusnitt, L. R. A. 1916D, 792.

If the contract was made with W. B. Grubbs he could not, without appellant's consent, delegate his authority to his brother and have M. D. Grubbs to do what the contract required him to do.

> "It is a general rule that, in all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal, and cannot be delegated to another, unless there is a special power of substitution, either express or necessarily implied." 21 R. C. L. P. 860, notes 38, Ann. Cas., p. 7.

The employment as sales agent was one of personal trust and confidence. The agent handled considerable money and property. To this end a bond was required and in this case a bond was given for the good conduct of W. B. Grubbs on the application of M. D. Grubbs. W. B. Brubbs did none of the business, received none of the property, collected none of the money. The bonding company was not liable for the acts of M. D. Grubbs, and if he was a sales agent he was such without bond. The good will of appellant depends on the good conduct of its sales agents, and so it was important to it to know who it was employing. Appellant insists that M. D. Grubbs is presenting false claims against it, dating back an order to get a bonus and has failed to account for certain property. None of this may have occurred if W. B. Grubbs had in fact made and carried out this contract.

We therefore conclude that appellant is not liable on the contract unless, with full knowledge of the facts, it by its state agent ratified the contract and allowed M. D. Grubbs to act as he did, knowing that he was not W. B. Grubbs. The notice published in the paper in March signed M. D. Grubbs, district manager, is not sufficient for this purpose, unless it was explained to the state agent and the real facts were brought to his knowledge. Note 38, Ann. Cas., p. 16.

The findings of the circuit court are not a finding that appellant knew the real facts or allowed M. D. Grubbs to act knowing that he was not W. B. Grubbs, and his rulings on objections to testimony show that his view was that appellant was without this liable on the contract for the services performed by M. D. Grubbs. This was error.

Clause D of the contract is in these words:

"Commissions on sales made by the employed hereunder shall be due only when sales are fully consummated by the execution of all papers pertaining to such sales and when full settlement of the amount due from the purchaser on such sales has been received in cash by the company at its New York office. Any commissions advanced the employed while this contract is in force, or after its termination, shall in no way be construed as altering the provisions for the payment of commissions as set forth in the foregoing part of this paragraph."

A number of the sales made by M. D. Grubbs had not been paid for at the time of the trial and in some cases were in litigation. By the terms of the contract he is not entitled to any commission on any sale until the money is actually paid. The court erred in allowing him commissions on any of the sales which had not been paid for as provided in the contract.

It appears that at the end of each month appellant sent W. B. Grubbs shortage slips, showing what he was short on for that month. No complaint was made of these shortage slips at the time or until this controversy arose. The circuit court disallowed them, apparently on the ground that there was no proof showing their correctness; but as the slips had been sent monthly and no complaint had been made of the charges in a reasonable time they were presumably correct and should have been

allowed on the trial as proper charges in the absence of clear and explicit proof that they were incorrect.

If the defendant is liable here at all it is liable on the contract. It is not liable on a *quantum meruit* to M. D. Grubbs for the services he rendered, because no man can become the employe of another by false impersonation and then claim compensation for his services. The appellant has a right to select its own agents, and if it did not select M. D. Grubbs he cannot recover for his services; but if it voluntarily carried out the contract made with W. B. Grubbs and allowed M. D. Grubbs to render the services under the contract as sales agent with full knowldge of the facts, it is liable on the contract to M. D. Grubbs, for in this case the impersonation of W. D. Grubbs was waived.

Judgment reversed and cause remanded for a new trial.